# Susman Godfrey L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
32ND FLOOR
1301 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6023
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

_____

| Suite 5100 | Suite 1400 | Suite 3000 |
|---|---|---|
| 1000 Louisiana Street | 1900 Avenue of the Stars | 401 Union Street |
| Houston, Texas 77002-5096 | Los Angeles, California 90067-6029 | Seattle, Washington 98101-2683 |
| (713) 651-9366 | (310) 789-3100 | (206) 516-3880 |

Geng Chen
Direct Dial (212) 729-2008

E-Mail GChen@susmangodfrey.com

April 28, 2023

VIA CM/ECF

Catherine O'Hagan Wolfe
Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re: *Aponte v. City of New York et al.* (No. 20-2186)

Dear Ms. O'Hagan Wolfe:

      We submit this supplemental letter brief on behalf of Appellant Felix Aponte pursuant to the Court's order, dated March 30, 2023, instructing the parties to address the effect of *Vincent v. Annucci*, 63 F.4th 145 (2d Cir. 2023), on the issues raised in the instant appeal, including the possible availability of punitive damages. In reaffirming this Court's precedents that state officials like Annucci had an obligation to act promptly to relieve individuals under their supervision of the conditions of unconstitutionally imposed PRS, and clarifying the framework for assessing compensatory damages for the deprivation of liberty suffered by these individuals, *Vincent* reinforces Aponte's request that this Court reverse the district court's summary judgment that Aponte is entitled only to nominal damages for his illegal incarceration and remand for the jury to determine both the time period and amount of Aponte's compensatory and punitive damages.[1]

      ***First***, *Vincent* conclusively establishes that the district court's summary judgment that Aponte is entitled only to nominal damages is error and should be reversed. Like Aponte, the plaintiff in *Vincent* was illegally incarcerated for violating the terms of his administratively imposed PRS. *See id.* at 148. In both cases, state officials unconstitutionally deprived the plaintiffs

---

[1] We also request that the Court reverse the district court's summary judgment order dismissing Aponte's claim for false imprisonment and dismissing certain individual defendants, for the reasons set forth in our prior briefing.

April 28, 2023
Page 2

of their liberty by unreasonably delaying their compliance with *Earley*'s holding that only courts could impose PRS. *See id.* at 151 ("As we have previously explained, Annucci's liability 'arose from [his] unreasonable delay in acting to comply with *Earley I* for many months after that decision,' ***not*** from the initial pre-*Earley* imposition of PRS." (emphasis added) (quoting *Hassell v. Fischer*, 879 F.3d 41, 51 (2d Cir. 2018))).[2] Like Vincent, Aponte seeks compensatory damages for that deprivation of liberty, which, as *Vincent* makes clear, are available if Aponte "suffered an injury as a result of [Appellees'] failure to follow our directive in *Earley* that would not have occurred otherwise." *Vincent*, 63 F.4th at 152.

In *Vincent*, this damages inquiry presented both legal and factual questions. As *Earley* left open the possibility of the state's seeking resentencing to include PRS, the *Vincent* panel first considered the legal question of whether Vincent was even "constitutionally eligible for resentencing." *Id.* at 152. Reaffirming the critical distinction between defendants still serving determinate sentences, who could not have a "legitimate expectation of finality" in their sentences, and defendants like Vincent, whose judicially imposed sentence was complete, the *Vincent* panel concluded that individuals whose sentences had already expired could not be resentenced *nunc pro tunc* to add PRS. *Id.* at 152-54. Accordingly, state officials' only "remaining option . . . was to excise the terms of the null and void administratively imposed PRS and relieve Vincent of the conditions associated with it," and the panel remanded to the district court the factual question of whether there had existed "any impediment" to "simply and unilaterally releasing Vincent." *Id.* at 154-55.

These principles apply equally to Aponte, who likewise seeks compensatory damages for deprivation of liberty due to administrative PRS ***after*** the completion of his determinate sentence.[3] It is undisputed that Aponte's determinate sentence was originally set to expire on February 13, 2008. *See, e.g.*, Appellees' Br. at 12. After he was released early in January 2007, however, Aponte was charged with violating the terms of his administrative PRS and, in July 2007, assessed an additional 12 months' imprisonment for that violation. *Id.* at 12-13. Appellees insist that this assessment extended the end date of Aponte's sentence from February 13 to June 6, 2008, *id.* at 14, but even if this explanation were accepted,[4] all it does is confirm that Aponte, like Vincent,

---

[2] Appellees defend the district court's $1 award by contending that "if 'procedural requirements in sentencing' had been observed at the initial sentencing hearing," Aponte's PRS would have been authorized, thus foreclosing any compensable injury arising from subsequent incarcerations for violating that PRS. Appellees' Br. at 46. But *Vincent* confirms that the relevant violation is Appellees' unreasonable delay, ***not*** Aponte's original sentence. *See Vincent*, 63 F.4th at 151; *see also* Appellant's Reply Br. at 5 ("[Appellees] seem to think that the violation at issue was the sentencing judge's failure to impose PRS on Aponte in the first instance. It was not.").

[3] We are not aware of any reason why Aponte should be treated differently from Vincent simply because Aponte's incarceration for a violation of administrative PRS began before his determinate sentence expired, while Vincent's began afterwards. Aponte does not seek damages for the time period prior to the expiration of his determinate sentence.

[4] We do not repeat our discussion of the evidentiary deficiencies with Appellees' contentions concerning the June 6 date and rest on the arguments raised in our prior briefing. *See* Appellant's

April 28, 2023
Page 3

was illegally incarcerated, after completing his sentence, for an administrative PRS violation. *See, e.g.*, *Vincent*, 63 F.4th at 153 ("*Earley* was clear that 'any additional penalty added to th[e] sentence by another authority is invalid, regardless of its source, origin, or authority until the judge personally amends the sentence.' So, the consequences that flowed from the administratively imposed PRS—including Vincent's PRS-based incarceration—were likewise ***unauthorized*** and ***without legal effect***." (emphasis added) (quoting *Earley v. Murray*, 462 F.3d 147, 149 (2d Cir. 2006))). Under *Vincent*, Aponte is ***eligible for compensatory damages starting on February 13, 2008***, as he could not have been resentenced *nunc pro tunc* during this time. *Vincent*, 63 F.4th at 154. Remand is required so that a jury may determine whether there had existed "any impediment" to "simply and unilaterally releasing" Aponte.

Appellees' violation of Aponte's constitutional rights did not stop there, however. Even though there was no legal basis for incarcerating Aponte after June 6, 2008, he languished in prison for at least two extra weeks, from June 6, 2008 (when Appellees contend his sentence expired) to June 20, 2008 (when Appellees contend Aponte was resentenced). *See* Appellees' Br. at 42 ("Aponte's continued detention under the revocation order for two weeks past his determinate sentence's maximum expiration date violated due process, as the district court recognized."). ***Aponte is categorically entitled to compensatory damages for this time.*** Even under Appellees' version of the facts, Aponte had served his full sentence—including the additional time illegally imposed for his violation of administrative PRS—and no "proper procedure" would have permitted Appellees to keep him behind bars after that date. *See Vincent*, 63 F.4th at 151 (explaining that compensatory damages are available unless the plaintiff would still have been subject to the "adverse action"—here, Aponte's continued incarceration after June 6, 2008—even if "proper procedure [had] been observed"). Aponte is entitled to have a jury determine the amount of his damages between June 6, 2008 and his resentencing; moreover, as the parties dispute the date that his resentencing actually occurred, *see* Appellant's Br. at 15, 28-29; Appellant's Reply Br. at 21-22, reversal of the district court's summary judgment is additionally required to resolve this factual issue.

When it comes to Aponte's resentencing in late June 2008, *Vincent* unequivocally rejected any argument this unconstitutional act could somehow go backwards in time to authorize Appellee's continued imprisonment of Aponte after June 6. *Compare Vincent*, 63 F.4th at 153 (explaining that a court has no power to "retroactively ratify an incarceration that was based upon a null and void act by DOCS"), *with* Appellees' Br. at 49 n.13 ("The district court mistakenly concluded that the two weeks of post-sentence incarceration after June 6, 2008, 'was *not* covered by the resentencing.' In fact, the resentencing order's three-year PRS term expired on January 16, 2010, and Aponte could have been imprisoned for the duration on a violation." (citations omitted) (emphasis in original)). Courts "do not have the power to substantively rewrite history or backdate events," and "[o]nce a defendant serves his original sentence," no court can "reverse the 'error'

---

Br. at 32-34; Appellant's Reply Br. at 14-21. We likewise do not repeat our arguments concerning the May 2, 2008 date that supposedly resulted from yet another recalculation of Aponte's sentence, but maintain that the very existence of this third alternative precludes the district court's summary judgment that Aponte's rights were not violated prior to June 6, 2008.

April 28, 2023
Page 4

and retroactively validate DOCS's *ultra vires* and unlawful imposition of PRS." *Vincent*, 63 F.4th at 153-54.

As for time periods after Aponte's unconstitutional resentencing, *Vincent* does not undermine this Court's established precedent that the determination of compensatory damages is a question for the factfinder. *See, e.g.*, *Kerman v. City of New York*, 374 F.3d 93, 132 (2d Cir. 2004) ("[I]t is the province of the jury to determine whether plaintiff's injury resulting from a demonstrated loss of liberty was serious or nonserious and, if serious, to determine what compensation should be awarded."). Furthermore, substantial factual disputes preclude the district court's summary judgment that Aponte's damages period ended on June 20, 2008. Genuine issues exist concerning how long Aponte remained in custody after his unconstitutional resentencing, *see* Appellant's Br. at 15, 29; Appellant's Reply Br. at 22, as well as the circumstances of Aponte's detention from June 26, 2008 to July 28, 2008 at the Edgecombe Residential Treatment Facility, *see* Appellant's Reply Br. at 22-23. Any compensatory damages for these violations of Aponte's rights should, per *Vincent* and this Court's prior precedents, likewise be decided by the jury.

**Second**, *Vincent* reinforces our previously stated position that state officials such as Annucci, as well as the other Appellees in this case, have plenary ***discretion*** over how they enforce PRS. "At a minimum," state officials are "obligated to 'at least attempt to cease [DOCS's] administrative and custodial operations that had been held to violate federal law,'" *Vincent*, 63 F.4th at 154 (quoting *Vincent v. Yelich*, 718 F.3d 157, 172-73 (2d Cir. 2013)), and cannot simply sit back and do nothing to remedy those violations. After Aponte was unconstitutionally resentenced in late June 2008, he was repeatedly imprisoned for PRS violations. *See* Appellant's Br. at 29-30; Appellant's Reply Br. at 23-25 (describing over a year of additional imprisonment from April 14, 2009 through March 23, 2010 and from January 8, 2011 through at least March 18, 2011). Relying on the resentencing order, Appellees claim that they lacked any discretion over Aponte's incarceration, *see* Appellees' Br. at 30-31, but *Vincent* puts that argument to bed. Nothing in the June 2008 resentencing order ***required*** Appellees to throw Aponte back in prison or keep him there for PRS violations, and that order cannot shield Appellees from liability for those actions. *See Vincent*, 63 F.4th at 154 ("And, as a state official, Annucci was not permitted to flout the Constitution or federal law, even if there were state laws to the contrary."). This is particularly true after *People v. Williams*, 14 N.Y.3d 198 (2010), held that resentencing individuals in Aponte's circumstances violates the Double Jeopardy Clause, though we maintain that this constitutional right was clearly established well before *Williams*. *See* Appellant's Reply Br. at 25-26 (citing *United States v. Rico*, 902 F.2d 1065, 1068-69 (2d Cir. 1990), and distinguishing *Hassell v. Fischer*). In any event, under *Vincent*, Aponte is entitled to remand to determine, at the very least, whether Appellees faced any "impediment" to immediately releasing Aponte once it became clear that his resentencing was void and that he was once again being illegally incarcerated pursuant to an unconstitutionally imposed PRS.

**Third**, *Vincent* sheds no doubt on the availability of punitive damages or Aponte's entitlement to a jury to determine the appropriate amount after hearing, *inter alia*, how Aponte's constitutional rights flagrantly were violated not once, but twice; how he was imprisoned for months after completing his sentence due to Appellees' continued enforcement of administrative

April 28, 2023
Page 5

PRS; how he was kept in prison even after the date Appellees admit they should have released him, just to cure Appellees' own delay in seeking resentencing; how that resentencing violated yet another of Aponte's fundamental rights; and how Aponte bore the burden of these violations as Appellees repeatedly re-incarcerated him over the next several years.

Although *Vincent* did not expressly address punitive damages,[5] the panel's emphatic rejection of Annucci's excuses for failing to comply with *Earley* is instructive. Annucci had already admitted that he understood *Earley*'s requirements, that nothing prevented him from changing DOCS's policies and customs to conform with the law, and that he simply decided not to comply. *Vincent*, 63 F.4th at 150 (citing *Betances v. Fischer*, 837 F.3d 162, 172-73 (2d Cir. 2016)). In denying Annucci's claim to qualified immunity, *Vincent* reiterated that state officials do not have free license to violate clearly established federal rights, regardless of state courts' cooperation (or lack thereof) with any remedial efforts. *See* 63 F.4th at 151 (noting that *Earley* "was binding on state courts and state officials, regardless of their willingness to accept it"). And, in describing Annucci's obligations to "at least attempt" to comply with *Earley*, *Vincent* is clear that state officials cannot sit back and do nothing. *Id.* at 154. A jury in this Circuit has already found, after hearing similar testimony from Annucci and other state officials (including Appellee Fischer), that these officials acted with callous or reckless disregard for the rights of individuals incarcerated for violations of unlawfully imposed PRS, and awarded punitive damages of $250,000 against each individual defendant. *See Santiago v. Fischer*, No. 12-CV-2137(KAM)(SLT), 2023 WL 2974201, at *13 (E.D.N.Y. Apr. 16, 2023) (denying motion to reduce jury award as excessive). Nothing in *Vincent* forecloses the possibility of punitive damages for such conduct, and as with Aponte's claim for compensatory damages, his entitlement to punitive damages is a question that should be answered in the first instance by the jury.

In sum, *Vincent v. Annucci* fully supports Aponte's request that this Court reverse the district court (including its dismissal of Aponte's false imprisonment claim and claims against certain individual defendants, *see supra* n.1) and remand for a trial on the time period during which Aponte was injured due to Appellees' conduct, as well as the amount of any compensatory and punitive damages to which he is entitled.

Sincerely,

*/s/ Geng Chen*

Geng Chen
Susman Godfrey L.L.P.
Counsel for Felix Aponte

---

[5] It appears that Vincent's motion for summary judgment did not seek punitive damages. *See* Br. for Pl.-Appellee at 8, *Vincent v. Annucci*, No. 21-0022 (2d. Cir. filed July 21, 2021), ECF No. 40 ("On remand, plaintiff moved for summary judgment holding Annucci liable for compensatory damages for the time he spent in custody on PRS violations.").