**IN THE**

# United States Court of Appeals

## For the Second Circuit

_____

August Term, 2021

Argued: February 17, 2022
Decided: July 20, 2023

No. 20-2186

Felix Aponte,

*Plaintiff-Appellant,*

*v.*

Ada Perez, Superintendent Downstate Correctional Facility, Brian
Fischer, Commissioner of the New York State Department of
Correctional Services (DOCS), Anthony J. Annucci, in his capacity as
Deputy Commissioner and Counsel for (DOCS), Lucien J. Leclaire,
former acting Commissioner of (DOCS), Glenn S. Goord, Former
Commissioner of (DOCS), Andrea W. Evans, in her capacity as Chair
and Chief Executive Officer of the New York State Division of Parole
(DOP), Mark Mantei, in his capacity as Executive Director of (DOP),
Robert J. Dennison, former Chair of (DOP), Anthony G. Ellis, former
Executive Director of (DOP), George B. Alexander, former Chair and
Chief Executive Officer of (DOP), in their Individual and Official
Capacities,

*Defendants-Appellees.**

_____

* The Clerk of the Court is directed to amend the caption to conform to the above.

Appeal from the United States District Court
for the Southern District of New York.
7:14-cv-3989 – Karas, *District Judge*.

_____

Before: CALABRESI, CARNEY, and ROBINSON, *Circuit Judges*.

_____

Plaintiff-appellant Felix Aponte appeals from a judgment of the United States District Court for the Southern District of New York (Karas, *J.*). This § 1983 suit arose from those portions of Aponte's imprisonment that occurred as a result of an improper imposition of administrative post-release supervision ("PRS") by New York State agencies, and subsequent improper imposition of PRS by a New York state court. Aponte's imprisonment in this respect was in clear violation of his due process rights. On appeal, Aponte argues *inter alia* that the district court erred in limiting relief to $1 in nominal damages, denying him punitive damages as a matter of law, and in granting summary judgment for the defendants-appellees on his false imprisonment claim. For the following reasons, we affirm in part and vacate in part the district court's judgment and remand for further proceedings.

_____

ARUN SUBRAMANIAN (Geng Chen, *on the brief*), Susman Godfrey L.L.P., New York, NY, *for Plaintiff-Appellant*.

ERIC DEL POZO, Assistant Solicitor General of Counsel (Barbara D. Underwood, Solicitor General, Steven C. Wu, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, New York, NY, *for Defendants-Appellees*.

20-2186
*Aponte v. Perez*

1    _____

2    CALABRESI, *Circuit Judge*:

3        Plaintiff-appellant Felix Aponte appeals from a judgment of the United

4    States District Court for the Southern District of New York (Karas, *J.*).  In 2000, a

5    New York state court sentenced Aponte to an eight-year determinate term of

6    imprisonment for attempted robbery, and the New York State Department of

7    Correctional Services ("DOCS") administratively added a five-year term of post-

8    release supervision ("PRS").  In *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), we

9    held that administratively imposed PRS terms are unconstitutional.  But Aponte's

10   administratively imposed PRS was not excised from his sentence, and it remained

11   improperly effective until he was resentenced in June 2008 by a New York state

12   court, after his determinate sentence had expired.

13       Between our decision in *Earley* and Aponte's resentencing, Aponte was

14   released subject to this improper administrative PRS.  He was then imprisoned for

15   violating this PRS and confined in prison beyond the expiration of his determinate

16   sentence.  Then, on two occasions after his June 2008 resentencing, Aponte was

17   held in custody pursuant to the PRS the court imposed after his sentence had

18   ended.  In *People v. Williams*, 925 N.E.2d 878, 889–90 (N.Y. 2010), the New York

3

1   Court of Appeals held the practice of judicial reimposition of PRS terms after the

2   expiration of an offender's determinate term unconstitutional.  Still, after *Williams*

3   and until March 2011, Aponte was twice incarcerated for violating his judicially

4   reimposed PRS.

5           Aponte sued the defendants-appellees (collectively, the "appellees")—

6   DOCS and New York Division of Parole ("DOP") officials—under 42 U.S.C.

7   § 1983, seeking to recover damages for the enforcement of his invalid PRS terms.

8   The district court found that Aponte suffered a clear due process violation during

9   the period between the maximum expiration of his determinate sentence and his

10  resentencing.  But it limited relief to $1 in nominal damages.  It further concluded

11  that though Aponte's incarceration pursuant to the terms of the subsequently

12  court-imposed PRS sentence might well have been invalid, these claims were

13  barred by qualified immunity.  The district court granted summary judgment for

14  the appellees on Aponte's false imprisonment claim.

15          This case requires us primarily to determine whether Aponte is entitled to a

16  jury trial to establish compensatory or punitive damages arising from his

17  imprisonment pursuant to the administratively imposed PRS which violated his

18  due process rights.  We hold that the operative law permits an award of punitive

4

damages in these circumstances, and that such damages may be awarded if the facts of the case justify them.

We also hold that the district court erred at the time in deciding that Aponte's compensatory damages were only nominal. But we instruct the district court to consider further whether the compensatory damages that Aponte seeks on appeal are still available to him in light of our recent decision in *Vincent v. Annucci*, 63 F.4th 145 (2d Cir. 2023) [hereinafter *Vincent*].

We further conclude that disputed issues of material fact as to the length of Aponte's illegal confinement preclude summary judgment for the appellees on his due process claim with respect to the period before June 6, 2008 and the period after June 20, 2008.

We also hold that the district court erred in granting summary judgment for the appellees on Aponte's false imprisonment claim.

Finally, we hold that Aponte's challenge to his post-resentencing confinement is foreclosed by the appellees' qualified immunity defense. We therefore affirm in part and vacate in part the district court's judgment and remand for further proceedings consistent with this opinion.

20-2186
*Aponte v. Perez*

1                                    **BACKGROUND**

2          The facts, viewed in the light most favorable to Aponte as the nonmoving

3   party in the district court, are as follows.  On April 25, 2000, Aponte pleaded guilty

4   to attempted robbery in the first degree in New York state court.  On May 5, 2000,

5   the Supreme Court of the County of New York sentenced Aponte to a determinate

6   term of eight years of imprisonment, without any PRS term in his sentence.  N.Y.

7   Penal Law § 70.45, however, imposes a mandatory period of PRS on all violent-

8   felony offenders.  Accordingly, even though the sentencing court had not imposed

9   PRS, DOCS administratively added a five-year PRS term to Aponte's sentence

10  after receiving him into custody.  At the time of sentencing in 2000, the Office of

11  Sentencing Review (within DOCS) calculated the maximum expiration date of

12  Aponte's determinate sentence as February 13, 2008.

13         Aponte served more than six years of his determinate sentence and was

14  conditionally released on January 16, 2007.  In 2006, well before his conditional

15  release, we held in *Earley* that PRS terms added by DOCS to a defendant's sentence

16  were constitutionally invalid. 451 F.3d at 76.  But because DOCS officials did not

17  comply with *Earley*, Aponte's conditional release improperly triggered the

18  beginning of his administratively imposed five-year PRS term.

6

1    Three weeks after his conditional release, Aponte was arrested for drug-

2    related offenses and charged with violating the conditions of his PRS.    An

3    Administrative Law Judge ("ALJ") at the Division of Parole first determined that

4    Aponte should participate in a voluntary, residential drug-treatment program at

5    Willard Drug Treatment Center.  Aponte refused to do so.  In response, on July 30,

6    2007, the ALJ imposed a delinquent time assessment of twelve months.  Under

7    N.Y. Penal Law §§ 70.40(2) and 70.45(5), the unelapsed portion of a defendant's

8    determinate term is "held in abeyance" upon conditional release.  As a result of

9    his PRS violation, the appellees argue, Aponte received no credit against his

10    sentence during the delinquent period between February 2007 and July 2007, and

11    the maximum expiration of his sentence was extended to June 6, 2008.

12    In June 2008—two years after our decision in *Earley*, and indisputably after

13    his determinate sentence had ended—DOCS took steps to address Aponte's

14    unconstitutional term of PRS.  In June 2008, the Supreme Court of the County of

15    New York resentenced Aponte *nunc pro tunc* to a determinate term of eight years

16    of imprisonment, followed by a three-year term of PRS.[1]  The court ordered DOCS

---

[1] The parties dispute the exact date of Aponte's resentencing. *See infra* Section III.

1    to release Aponte "forthwith into the community, or otherwise into post-release

2    supervision," if it determined that Aponte "has served the full jail term of [his]

3    modified sentence, and is not subject to any other hold or detainer."  A 195.  On

4    June 26, 2008, Aponte was transferred to a residential treatment facility, where he

5    remained in custody until July 28, 2008.  A 165.

6          On April 14, 2009, Aponte was reincarcerated for a new violation of his

7    court-imposed PRS and remained in prison until March 23, 2010.  A 165.  In

8    February 2010, while Aponte was still incarcerated, the New York Court of

9    Appeals held that a resentencing by a court to impose a term of PRS undertaken

10   *after* the expiration of a convicted offender's determinate sentence violates the

11   Double Jeopardy Clause, and, as a result, that any term of PRS purportedly so

12   imposed cannot be enforced.  *People v. Williams*, 925 N.E.2d at 889–90.  On January

13   7, 2011, Aponte was reincarcerated for another violation of his PRS and remained

14   in prison until March 17, 2011.  A 165.[2]

---

[2] Aponte is currently serving a twenty-four-year term of imprisonment for a robbery that he
committed in 2011.  A 54.3–54.4, 172–73.

1       On May 29, 2014, Aponte sued the appellees *pro se* under § 1983 in the

2  United States District Court for the Southern District of New York.[3]  Aponte's

3  operative second amended complaint alleged that the appellees "subject[ed him]

4  to unlawful custody by continuing to impose terms of [PRS] that had been

5  declared unlawful and arresting and re-incarcerating [him] for technical violations

6  of those terms."  A 58.  Aponte brought claims for "false imprisonment, illegal

7  detainment, illegal negotiation of post release supervision, and violation of [his]

8  Constitutional Rights" under the Fifth, Sixth, Eighth, and Fourteenth

9  Amendments.  A 60.  Aponte sought $3 million in compensatory damages and $3

10  million in punitive damages from each defendant.

11       On April 17, 2017, the appellees moved to dismiss the second amended

12  complaint.  On February 28, 2018, the district court denied the appellees' motion

13  to dismiss Aponte's due process and false imprisonment claims for the period

14  between the end of Aponte's determinate sentence, which the district court

15  deemed to be June 6, 2008, and his resentencing, which the district court deemed

---

[3] Aponte's second amended complaint included the City of New York as a defendant.  On September 26, 2016, the district court granted the City of New York's motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Aponte has not appealed this dismissal.

1  to be June 20, 2008.  As to the period after Aponte's June 2008 resentencing, the

2  district court found that the appellees were entitled to qualified immunity.  In the

3  alternative, the district court found that Aponte's resentencing by the state court

4  constituted an intervening cause that relieved the appellees of liability.  The

5  district court granted the appellees' motion with respect to all other claims.

6  On October 1, 2019, the appellees moved for summary judgment on

7  Aponte's remaining due process and false imprisonment claims.  On April 20,

8  2020, the district court granted the appellees' motion in part and denied it in part.

9  The district court found a due process violation for the period between the

10  maximum expiration of Aponte's determinate sentence and his resentencing on

11  June 20, 2008.  Relying on the declaration of an employee of the Office of

12  Sentencing Review, the district court concluded that the beginning of this due

13  process liability period, i.e., the maximum expiration date of Aponte's determinate

14  sentence, was June 6, 2008.

15  The district court explained that this liability period of fourteen days

16  between June 6, 2008 and June 20, 2008 "d[id] not fall within any legitimate

17  determinate sentence" and resulted from the appellees' failure to comply with our

18  decision in *Earley*.  A 239.  The district court held that the appellees were not

1    entitled to qualified immunity for the due process liability period, "given their

2    clear understanding of the state of the law after *Earley* and their failure to bring

3    their departments into compliance for a year or more afterwards."  A 241–42.  The

4    district court also determined that Annucci and Fischer, but not the other

5    individual appellees, could have been personally involved in the due process

6    violation.

7        As to the period before the maximum expiration of Aponte's determinate

8    sentence, the district court relied on our decision in *Hassell v. Fischer*, 879 F.3d 41

9    (2d Cir. 2018), to conclude that no due process violation had occurred.  The district

10   court reasoned that even in the absence of the unconstitutionally imposed PRS,

11   Aponte would have been subject to a release that was conditional and hence would

12   not have experienced any less onerous repercussions.

13       With respect to Aponte's false imprisonment claims, the district court

14   granted summary judgment for the appellees, on the ground that Aponte's

15   confinement was privileged pursuant to a court order.  The district court

16   explained:  "Plaintiff's additional detainment here, according to the record, was

17   the result of a court order seeking to resentence Plaintiff and constitutionally

18   impose a PRS term nunc pro tunc."  A 244.

1    The district court denied summary judgment with respect to the appellees'

2    argument that Aponte was entitled only to nominal damages.  The district court

3    noted that Aponte "may be 'entitled to compensatory, not merely nominal

4    damages,'" A 244 (quoting *Kerman v. City of New York*, 374 F.3d 93, 124 (2d Cir.

5    2004)), and "may be entitled to present [the question regarding compensatory

6    damages] before a jury," *id.* at 245.

7    The district court instructed Aponte to respond within thirty days with a

8    brief explanation why he was entitled to more than nominal damages for the due

9    process liability period of June 6, 2008 to June 20, 2008.  On May 18, 2020, Aponte,

10   still proceeding *pro se*, filed a response, and requested $4,000 per day of

11   compensatory damages for his "injuries[,] mental anguish, stress, [and] duress."

12   A 251.  Aponte also requested punitive damages.

13   On June 4, 2020, the district court entered a final judgment for $1 in nominal

14   damages on Aponte's due process claim.  The district court concluded that Aponte

15   failed to allege any actual injury and referred only "to the injustice of being

16   detained unconstitutionally and generalized 'mental' and 'emotional' suffering."

17   A 257.

18   Aponte timely appealed, and we appointed counsel.

## DISCUSSION

On appeal, Aponte argues *inter alia* that (1) the district court erred in limiting relief to $1 in nominal compensatory damages; (2) the district court erred in failing to find punitive damages to be available; (3) disputed issues of fact as to the length of his illegal confinement precluded summary judgment for the appellees on his due process claim; (4) the district court erred in granting summary judgment for the appellees on his false imprisonment claim; and (5) the district court erred in dismissing his claims based on his confinement after his June 2008 resentencing.

We have jurisdiction under 28 U.S.C. § 1291. "We review the district court's grant of summary judgment *de novo*, construing the facts in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021). "The movant must show that there is no genuine issue as to any material facts, and that they are entitled to judgment as a matter of law." *Id.* (citing *June v. Town of Westfield*, 370 F.3d 255, 257 (2d Cir. 2004)).

**I.   Punitive Damages**

We first address Aponte's argument that he is entitled to a jury trial to determine the existence and possible amount of punitive damages.  In a § 1983 action, "punitive damages may be awarded . . . 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"  *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 121 (2d Cir. 2006) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  "To be entitled to an award of punitive damages, a claimant must show a 'positive element of conscious wrongdoing.'"  *Id.* (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 538 (1999)).

We have long recognized that punitive damages may be available in certain circumstances where actual damages are only nominal.  *Id.* ("The fact that the constitutional violation does not warrant an award of compensatory damages is not a basis for denying an award of punitive damages."); *Stolberg v. Members of Bd. of Trs. for State Colls. of Conn.*, 474 F.2d 485, 489 (2d Cir. 1973) ("[P]unitive damages may, in an appropriate case, be awarded for violation of 42 U.S.C. § 1983, even in the absence of actual damages . . . ."); *see also Robinson v. Cattaraugus County*, 147 F.3d 153, 161 (2d Cir. 1998); *King v. Macri*, 993 F.2d 294, 298 (2d Cir. 1993).  In other

1   words, the availability of compensatory damages in a § 1983 suit is not a

2   prerequisite to punitive damages.

3       We conclude that Aponte is entitled to a jury trial to establish the availability

4   of punitive damages arising from his confinement pursuant to the

5   administratively imposed PRS. We have admonished the appellees for their

6   repeated failure to take prompt action to end the custody of prisoners

7   unconstitutionally detained for violating PRS terms imposed by DOCS, when the

8   appellees were fully aware of the holding and implications of *Earley*. *See, e.g.*, *Reyes*

9   *v. Fischer*, 934 F.3d 97, 101 (2d Cir. 2019) ("The defendants [(including Fischer and

10  Annucci)] have appeared before this Court many times regarding their imposition

11  of PRS, and their deliberate refusal to follow *Earley I*'s holding is well

12  documented."); *Betances v. Fischer*, 837 F.3d 162, 167 (2d Cir. 2016) ("Annucci

13  immediately understood *Earley I*'s holding but deliberately refused to change

14  DOCS procedures to bring them into compliance."); *Hassell*, 879 F.3d at 51 (holding

15  that defendants unreasonably failed to comply with *Earley* by subjecting the

16  plaintiff to administratively imposed PRS terms); *Vincent v. Yelich*, 718 F.3d 157,

17  173 (2d Cir. 2013) [hereinafter *Yelich*] ("Annucci testified . . . that he was 'aware of

18  the Second Circuit's decision in *Earley v. Murray* at the time it came out in 2006,'

15

that he was aware that *Earley I* ruled 'that DOCS did not have the authority to add a period of post-release supervision, if it was not included by the sentencing judge,' and that he 'did not agree with that decision.'" (citation omitted)).

Most recently, in *Vincent*, we emphatically noted "Annucci's unexcused delay in complying with *Earley*." 63 F.4th at 150; *see also id.* at 151 ("*Earley* was a decision that *this* court had issued. Under the Supremacy Clause of the Constitution, it was binding on state courts and state officials, regardless of their willingness to accept it.").

In the case before us, the appellees did not arrange for a state court to resentence Aponte until two years after *Earley*. *Cf. Betances*, 837 F.3d at 173 ("[T]he unexcused delay of 14 to 19 months between *Earley* [] and [DOCS and Division of Parole officials'] first significant remedial efforts was objectively unreasonable."). The appellees' deliberate refusal to comply with *Earley* therefore shows "conscious wrongdoing" and a "reckless or callous indifference to [] federally protected rights," and hence can serve as a basis for punitive damages. *Meyers*, 442 F.3d at 121 (citations and internal quotation marks omitted).

Punitive damages may be especially appropriate here. "[P]unitive damages serve the dual purpose of deterrence and retribution," and the "purpose of § 1983

1    is 'not only to provide compensation to the victims of past abuses, but to serve as

2    a deterrent against future constitutional deprivations, as well.'" *Ciraolo v. City of*

3    *New York*, 216 F.3d 236, 242 (2d Cir. 2000) (Calabresi, J., concurring) (citations and

4    internal quotation marks omitted).  As a result, "[p]unitive damages can ensure

5    that a wrongdoer bears all the costs of its actions, and is thus appropriately

6    deterred from causing harm, in those categories of cases in which compensatory

7    damages alone result in systematic underassessment of costs, and hence in

8    systematic underdeterrence." *Id.* at 243.

9         As we explain below, our decision in *Vincent* may make it more difficult for

10    Aponte to obtain compensatory damages.  In such circumstances, punitive

11    damages may ensure that the appellees bear at least some cost for the undisputed

12    due process violation that Aponte suffered.

13         We therefore hold that Aponte is entitled to a jury trial to establish punitive

14    damages. *See Cameron v. City of New York*, 598 F.3d 50, 69 (2d Cir 2010) (concluding

15    that in order to present "a question of fact . . . to the jury" as to punitive damages,

16    the "plaintiffs' evidence need only be enough 'to permit the factfinder to *infer* that

17    the responsible official was motivated by malice or evil intent or that he acted with

18    reckless or callous indifference'" (citations omitted)).

1    **II.    Compensatory Damages**

2    We next turn to Aponte's claim that a jury must consider awarding more

3    than nominal compensatory damages.  As to this, we are bound by our prior

4    decision in *Vincent*.  The plaintiff in *Vincent* also sued under § 1983 for unlawful

5    confinement pursuant to an administratively imposed PRS, and sought

6    compensatory damages.  63 F.4th at 147.  In *Vincent*, we noted that in a § 1983 suit,

7    "[w]hen a defendant has deprived the plaintiff of liberty, but the adverse action

8    would have been taken even in the absence of the wrongful conduct, the plaintiff

9    is entitled only to nominal damages."  *Id.* at 151 (alteration in original) (quoting

10   *Rentas v. Ruffin*, 816 F.3d 214, 223 (2d Cir. 2016)).  We explained that this "analysis

11   requires [us] to reconstruct what would have 'occurred had proper procedure

12   been observed,'" that is, "whether . . . [the plaintiff] established that he suffered an

13   injury as a result of Annucci's failure to follow our directive in *Earley* that would

14   not have occurred otherwise."  *Id.* at 151–52 (citation omitted).

15   In *Vincent*, we rejected Annucci's "assert[ion] that, had he promptly referred

16   [the *Vincent* plaintiff] for judicial resentencing after *Earley*, the state court would

17   have likely imposed PRS *nunc pro tunc*."  *Id.* at 153.  That is, "*Earley* gave [New

18   York] the option of either (1) arranging for defendants subject to null and void PRS

1   terms to be appropriately resentenced or (2) excising their PRS terms." *Id.* at 147.

2   And in *Vincent*, resentencing—the proper procedure—"was not available,"

3   because the plaintiff "had completed [his] judicially imposed sentence[] and w[as]

4   incarcerated solely for violating [his] administratively imposed PRS term[]." *Id.*

5   By the time we decided *Earley* in June 2006, the plaintiff in *Vincent* had already

6   been arrested for violating his administratively imposed PRS. And this was *after*

7   the expiration of his maximum determinate sentence. *Id.* at 148.

8        *Vincent* held that "[o]nce a defendant serves his original sentence . . . , a court

9   cannot reverse the 'error' and retroactively validate DOCS's *ultra vires* and

10   unlawful imposition of PRS." *Id.* at 154. In other words, New York courts could

11   not have resentenced the *Vincent* plaintiff *nunc pro tunc* to comply with *Earley*. As

12   a result, had proper procedure been observed, the *Vincent* plaintiff likely would

13   not have suffered the same injury. Under such circumstances, *Vincent*'s analysis

14   requires a jury to determine the amount of compensatory damages, whether

15   nominal or more. *See id.* at 151; *Patterson v. City of Utica*, 370 F.3d 322, 338 (2d Cir.

16   2004) ("[I]t is evident that in order to award plaintiff compensatory damages, *the*

17   *jury* must determine that the injuries plaintiff claims he suffered as a result of the

1    deprivation of his liberty interest would not have occurred if [the defendant] had

2    provided plaintiff with [] sufficient [procedure]." (emphasis added)).

3        By contrast, Aponte's determinate sentence did not expire until at least

4    2008.[4]   In June 2006, when we decided *Earley*, Aponte was still serving his

5    determinate sentence; he was not conditionally released until January 16, 2007.  In

6    *Vincent*, we noted that "there is no constitutional bar to resentencing defendants

7    who were incarcerated and serving determinate sentences without a judicially

8    imposed PRS term."  *Id.* at 152 (citing *Smith v. Wenderlich*, 826 F.3d 641, 651 (2d Cir.

9    2016)).

10       New York courts, therefore, could have resentenced Aponte *nunc pro tunc*

11   to comply with *Earley*.  They could have included in that resentencing a properly

12   imposed PRS term.  And all this could have been done before Aponte's conditional

13   release in 2007.[5]  Had such a proper procedure been followed, it is likely that

---

[4] As stated above, the parties dispute the precise date on which Aponte's determinate sentence expired, but neither party suggests a date before February 13, 2008.

[5] In *Vincent*, we expressed no view as to whether resentencing would have been possible for defendants who were conditionally released before *Earley* was decided, but still within the term of their judicially imposed determinate sentence.  63 F.4th at 154 n.53.  Since Aponte was not conditionally released until January 2007, seven months after *Earley*, we need not reach this question.

1    Aponte would have been detained for violating the terms of a constitutionally

2    imposed PRS, and hence would have suffered the same injury.

3          We do not, however, hold that compensatory damages above a nominal

4    amount are unavailable.  That is a question that we leave for the district court to

5    determine anew in light of *Vincent*. In their supplemental briefing regarding the

6    effect of *Vincent* on this appeal, the appellees do not take *Vincent* as *categorically*

7    precluding compensatory damages for defendants in Aponte's position.  Both

8    sides may be read as suggesting that the facts of this case may lead to a conclusion

9    that the injury Aponte suffered would not have occurred even had there been a

10   timely referral for a judicial reimposition of the PRS.  And if this is so, as *Vincent*

11   holds, 63 F.4th at 151–54, it would be up to a jury to determine what amount of

12   compensatory damages Aponte should receive.

13         Given the fact-intensive nature of the inquiry and the appellees' approach

14   in their supplemental briefing, and especially as we are remanding on punitive

15   damages, we therefore instruct the district court to consider further whether,

16   under *Vincent*, compensatory damages may still be available to Aponte.  If, in light

17   of our intervening decision in *Vincent*, it decides that Aponte has shown a

1   sufficient basis for an award, then it should direct the jury to determine the

2   appropriate amount.

3   **III.    Relevant Period of Unlawful Confinement**

4   With respect to the period before the state court imposed a PRS sentence

5   during which Aponte alleges he was unlawfully confined, we agree with Aponte

6   that material issues of disputed fact preclude summary judgment. The appellees'

7   Rule 56.1 statement stated that as of May 30, 2000, the maximum expiration date

8   of Aponte's sentence was February 13, 2008, and as of July 30, 2007, it was June 6,

9   2008. They rely on a declaration of an employee of the New York State Department

10  of Corrections and Community Supervision ("DOCCS") to support the latter

11  assertion. *See* Decl. of Kristina M. Lennon (stating without explanation, "DOCCS

12  records document that the maximum expiration date of Mr. Aponte's determinate

13  term [as of July 30, 2007] was June 6, 2008"). A 168.

14  On appeal, Aponte argues that there are material disputes about when his

15  determinate sentence ended. He argues that the Lennon Declaration is

16  inadmissible hearsay and that it is contradicted by other portions of the appellees'

17  summary judgment evidence; in particular, he advances the view that the

18  explanation offered by the appellees in their briefing for the change in maximum

termination date from February 13, 2008 to June 6, 2008 is not supported by the

record.  The appellees' retort is three-fold: that Aponte forfeited this argument

because he failed to respond to their summary judgment motion, that the Lennon

Declaration falls within a hearsay exception for statements of a public officer

regarding the office's activities, and that they had no obligation to explain the

change of termination date.

We conclude that Aponte's failure in the district court to object to the

appellees' statement of material facts does not preclude him from relying on

inconsistencies in the appellees' own evidence to identify a disputed issue of

material fact that made it erroneous to enter summary judgment.  *See Vermont*

*Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (noting that

even if a summary judgment motion is unopposed, the moving party must still

establish the absence of a genuine issue of material fact, and that the moving party

is entitled to judgment as a matter of law).  Even assuming the district court

properly considered the Lennon Declaration, a question we need not decide, the

bare assertion that as of July 30, 2007, DOCCS records indicated that the maximum

expiration date of Aponte's determinate term was June 6, 2008, does not quiet the

apparent contradiction between that assertion and the previously reported

1    maximum expiration date of February 13, 2008.  The appellees' brief on appeal

2    suggests an explanation for the changed date, but the record contains no support

3    for that explanation as the contemporaneous rationale.  For this reason, we

4    conclude that factual uncertainty as to the expiration date of Aponte's determinate

5    sentence prevented entry of summary judgment for the appellees with respect to

6    the period from February 13, 2008 to June 6, 2008.  The district court (or, possibly,

7    after further factual development, a jury) should resolve the question on remand.

8         Similarly, Aponte disputes the district court's finding that his resentencing

9    hearing took place on June 20, 2008.  Aponte notes that though the court's

10   sentencing order is dated June 20, 2008, it is stamped June 24, 2008.  Additionally,

11   while Aponte's inmate records do not show any "movement" on June 20, 2008,

12   they "do contain an entry for June 24, 2008, the same date as stamped on the

13   resentencing order."  Appellant's Br. 28–29 (citing A 165).  The appellees respond

14   that "Aponte misreads the record," as the stamp date reflects the date that the

15   order was filed in the clerk's office, which is "a separate event from when it was

16   originally issued."  Appellees' Br. 37. For substantially the same reasons discussed

17   above, we find the inconsistencies in the record sufficient to constitute a triable

18   issue of material fact.

1    **IV.    False Imprisonment**

2    We next address the district court's grant of summary judgment on

3    Aponte's false imprisonment claim.  "Under New York law, the elements of the

4    tort of false imprisonment are: '(1) the defendant intended to confine [the plaintiff],

5    (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent

6    to the confinement and (4) the confinement was not otherwise privileged.'"

7    *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (per curiam) (quoting

8    *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975)).

9    We conclude that the district court erred in granting summary judgment for

10    the appellees on the false imprisonment claim.  The district court found that

11    Aponte's confinement was privileged pursuant to "a court order seeking to

12    resentence [Aponte] and constitutionally impose a PRS term nunc pro tunc."  A

13    244.  But the district court cited nothing to indicate the actual existence of such a

14    court order beyond the appellees' own statement of facts in support of summary

15    judgment.  And the appellees' statement of facts, in turn, referred only to the June

16    20, 2008 court order.  That court order, however, resentenced Aponte *nunc pro tunc*

17    (to include a term of PRS) and was issued *after* Aponte was already detained

18    unlawfully pursuant to the administratively imposed PRS.

1    The appellees now argue that despite their failure to produce the relevant

2    court order, "[t]he only reasonable inference is that a court had issued an order to

3    produce Aponte for purposes of resentencing," because such an order "is

4    ordinarily required." Appellees' Br. 43. We disagree.

5    At summary judgment, we "constru[e] the facts in the light most favorable

6    to the non-moving party and draw[] all reasonable inferences in its favor." *Ashley*,

7    992 F.3d at 136; *see also Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir.

8    2003) (rejecting the contention "that if a defendant asserts in his Rule 56.1

9    statement a material fact on which his summary judgment motion depends but

10   supports it with a wholly unsupportive record citation, a plaintiff's failure to

11   controvert the statement absolves the district court of [] checking whether the

12   citation supports the assertion").

13   The absence of any evidence of the existence of a relevant court order creates

14   a genuine dispute of material fact and does not allow us to infer that Aponte's

15   confinement was privileged.[6] While Aponte's false imprisonment claim may, in

---

[6] The appellees also argue that Aponte's false imprisonment claim is time-barred, and that Aponte's confinement in *2008* (i.e., between the maximum expiration of Aponte's determinate sentence and his resentencing) was privileged on the basis of a 2007 parole warrant. The

1   the end, duplicate his due process claim, *see Warren v. Pataki*, 823 F.3d 125, 142 (2d

2   Cir. 2016), we conclude that the district court's grant of summary judgment on the

3   basis of privilege, at this stage, was improper.

4   **V.   Compensatory   Damages   Relating   to   Post-Resentencing**

5   **Confinement**

6       Finally, we consider Aponte's claims arising from his post-resentencing

7   confinement.   Aponte argues that the court's purported June 20, 2008 order

8   sentencing him to PRS terms was unlawful because once his determinate term

9   expired—on June 6, 2008, at the very latest—the court could not properly impose

10  a new sentence of post-release supervision.  *See Williams*, 925 N.E.2d at 889–90.  He

11  therefore challenges his confinement pursuant to that unlawful sentence of post-

12  release supervision.

---

appellees failed to make these arguments before the district court, and we need not address them on appeal.  *Doe v. Trump Corp.*, 6 F.4th 400, 410 (2d Cir. 2021) ("Although we may exercise discretion to consider [forfeited] arguments where necessary to avoid a manifest injustice, the circumstances normally do not militate in favor of an exercise of discretion to address . . . new arguments on appeal where those arguments were available to the [parties] below and they proffer no reason for their failure to raise the arguments below." (alteration in original) (quoting *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (per curiam))).

1    For the time in which Aponte was incarcerated for a violation of his

2    judicially imposed PRS—before *Williams* was decided—our decision in *Hassell v.*

3    *Fischer* directly precludes Aponte's claims. 879 F.3d 41 (2d Cir. 2018). Like Aponte,

4    Hassell sought damages for the imposition of a PRS by a court after his

5    determinate sentence had expired. This Court affirmed the district court's

6    dismissal of his claims on qualified immunity grounds, explaining that "[u]ntil the

7    2010 decision of the New York Court of Appeals in *People v. Williams*, it was not

8    clearly established that *judicially* imposed PRS upon released prisoners was

9    unlawful." *Id*. at 50.

10    We today hold that qualified immunity also shields the appellees as to

11    Aponte's challenge to the post-*Williams* time period in which he was incarcerated

12    for a violation of his judicially imposed PRS. As to this time period, our holding

13    in *Hassell* does not directly apply. The district court in the instant case, relying on

14    *Hassell*, appears to have held that after the *Williams* decision the appellees

15    necessarily had a qualified immunity defense to claims arising from Aponte's

16    incarceration for violations of his judicially imposed PRS because they followed a

1   valid court order.[7]  If the district court held that the existence of such a court order

2   *necessarily* protected the appellees and gave rise to qualified immunity, the district

3   court erred.

4        Following orders, no matter how invalid they are on their face, cannot be an

5   absolute defense.  Indeed, there are cases where simply following orders can be

6   criminal if the order is so obviously enough invalid or on its face so clearly

7   unconstitutional that any reasonable official would know the order contains

8   instructions that ought not be executed.  *See, e.g.*, *United States v. Calley*, 48 C.M.R.

9   19, 26–27 (C.M.A. 1973).  Nor can we say that in every case the fact that there is a

10  subsequent cause makes the original cause irrelevant to the inquiry about an

11  official's liability; that, too, depends on the circumstances.  For these reasons, any

12  *automatic* application of qualified immunity to situations in which a prison official

13  executes a court order is error. That said, in the circumstances of this case, we

14  believe that a reasonable prison official might very well have properly followed

15  the court order. The applicable court order did not on its face "violate clearly

16  established statutory or constitutional rights of which a reasonable person would

---

[7] To the extent that *Hassell* can be read that way, it is only dicta. *See* 879 F.3d at 50.

1    have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).  As a result, applying the

2    normal standards of qualified immunity to the circumstances before us, we hold

3    that the appellees' actions in incarcerating Aponte pursuant to this specific court

4    order qualify as reasonable as a matter of law.  *See Hassell*, 879 F.3d at 50.[8]

5                                      **CONCLUSION**

6           We therefore hold that Aponte is entitled to a jury trial to establish the

7    availability of punitive damages arising from his illegal confinement pursuant to

8    the administratively imposed PRS.

---

[8] We reject Aponte's suggestion that *Hassell* does not bar his claim for the appellees' failure to release him "forthwith" following the court's June 2008 sentencing order.  Appellant's Br. 28–29. The appellees point to record evidence that, following his resentencing, Aponte was transferred to a residential treatment facility where he lived for about one month as part of his post-release supervision pursuant to Penal Law § 70.45(3) (which authorizes a condition of PRS requiring transfer to a residential treatment for up to six months upon release from the term of imprisonment).  Aponte does not argue that he could not have been transferred to a residential treatment facility for several months pursuant to a lawful court order for PRS; he argues simply that because the state court's resentencing was unlawful, he could not be held in a residential treatment facility.  This is no different from his challenge to subsequent periods of confinement resulting from the court-ordered PRS and fails for the same reasons.

Our affirmance of the district court's dismissal of Aponte's claims arising from post-resentencing confinement resolves Aponte's challenge to the district court's dismissal of his claims against Andrea Evans, who was allegedly liable for her actions as Chair of Parole beginning in 2009.  We likewise affirm the district court's dismissal of Aponte's claims against Glenn Goord, Lucien LeClaire, and George Alexander on the ground that Aponte produced no evidence of the requisite personal involvement with respect to Aponte's unlawful confinement in 2008.

1    We also ask the district court to consider further whether compensatory

2    damages are still available to Aponte in light of *Vincent*, and if they are, to direct a

3    jury to determine the proper amount of such damages.

4    The district court erred in holding that Aponte's illegal confinement

5    pursuant to the administratively imposed PRS was restricted to the period from

6    June 6, 2008 to June 20, 2008 because disputed issues of material fact precluded

7    summary judgment on his due process claim regarding the date on which his

8    determinate sentence ended and the date on which he was resentenced to PRS by

9    the state court. We remand to allow for further factual development and for the

10   district court (or a jury, if disputed facts remain) to determine the length of

11   Aponte's illegal confinement.

12   We also conclude that the district court erred in granting summary

13   judgment for the appellees on Aponte's false imprisonment claim with respect to

14   his confinement before resentencing.

20-2186
*Aponte v. Perez*

1    Finally, we hold that Aponte's challenge to his post-resentencing

2  confinement is precluded by the appellees' qualified immunity defense.

3    The judgment of the district court is therefore AFFIRMED in part and

4  VACATED in part, and the case is remanded for further proceedings consistent

5  with this opinion.